**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MYRON JAMIL STEVENS,  </br>   Plaintiff,  </br> v.  </br> KILOLO KIJAKAZI,  </br> ACTING COMMISSIONER OF  </br> SOCIAL SECURITY ADMINISTRATION,  </br>   Defendant. | ) CASE NO. 1:23-CV-00105-SO </br> ) </br> ) JUDGE SOLOMON OLIVER, JR. </br> ) UNITED STATES DISTRICT JUDGE </br> ) </br> ) MAGISTRATE JUDGE </br> ) JENNIFER DOWDELL </br> ) ARMSTRONG </br> ) </br> ) **REPORT AND RECOMMENDATION** </br> ) |

**I.  INTRODUCTION**

Plaintiff Myron Jamil Stevens ("Mr. Stevens") seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Period of Disability ("POD"), Social Security Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated January 19, 2023). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

**II.  PROCEDURAL HISTORY**

On October 5, 2020, Mr. Stevens applied for POD, DIB, and SSI. (Tr. 673, 680). Mr. Stevens' applications related to a pinched nerve in his back, arthritis in his spine, and a stroke. (Tr. 711).

The Social Security Administration ("SSA") denied Mr. Stevens' applications initially and upon reconsideration. (Tr. 546-47, 564-65). Mr. Stevens requested a hearing before an administrative law judge ("ALJ"). (Tr. 610). On September 7, 2021, eight days before the hearing,

1

Mr. Stevens' counsel advised the ALJ that Mr. Stevens had an outstanding request for records to MetroHealth Medical Center. (Tr. 762). Mr. Stevens' counsel asked the ALJ to hold the record open to accept those records pursuant to 20 C.F.R. § 405.331 and Social Security Ruling 17-4p. *Id*.

The ALJ held a hearing on September 15, 2021, at which Mr. Stevens was represented by counsel. (Tr. 504). Mr. Stevens testified, as did an impartial vocational expert ("VE"). On September 24, 2021, Mr. Stevens submitted additional records from MetroHealth Medical Center. (Tr. 668, 1422-25). Also on September 24, 2021, the ALJ issued a written decision, finding that Mr. Stevens was not disabled. (Tr. 566). The ALJ did not exhibit or discuss the records Mr. Stevens submitted on September 24, 2021 in his decision.

Mr. Stevens requested review of the ALJ's decision. (Tr. 664). On September 27, 2022, the Appeals Council accepted Mr. Stevens' request for review, determining that the ALJ committed an error of law in failing to consider the evidence Mr. Stevens had submitted on September 24, 2021. (Tr. 667). The Appeals Council also informed Mr. Stevens, however, that, it planned to issue a decision finding that Mr. Stevens was not disabled. (668). The Appeals Council informed Mr. Stevens that he was permitted to submit a statement supporting his case or additional evidence within 30 days. (Tr. 669). Mr. Stevens submitted a representative brief on October 6, 2022. (Tr. 769). On December 5, 2022, the Appeals Council issued a decision finding that Mr. Stevens was not disabled. (Tr. 1).

On January 19, 2023, Mr. Stevens filed his complaint, challenging the Commissioner's final decision. (ECF Doc. No. 1). Mr. Stevens asserts the following assignment of error:

(1) The ALJ erred when he assigned the claimant a residual functional capacity without considering newly admitted material evidence.

(ECF No. 7, PageID # 1458).

2

### III. BACKGROUND

#### A. Personal, Educational, and Vocational Experience

Mr. Stevens was born in 1977 and was 43 years old on the alleged onset date. (Tr. 508). He has one daughter. (Tr. 674). Mr. Stevens attended school through the 11th grade. (Tr. 508). He has prior work as a laborer and a landscaper. (Tr. 712).

#### B. Relevant Hearing Testimony

##### 1. *Mr. Stevens' Testimony*

Mr. Stevens testified that he experiences pain in his lower back and numbness and flapping in his left leg. (Tr. 509-10). He further testified that he experiences falls and that he has trouble sleeping because he is in so much pain and because he cannot get comfortable. (Tr. 510).

Mr. Stevens testified that he had surgery in 2019, after which he returned to work. *Id*. He testified, however, that he had to quit his job because he could not perform it. *Id*. He also testified that he had a second surgery in 2020 but that the surgery did not improve his issues. *Id*. He similarly testified that injections did not help his pain. (Tr. 514). Mr. Stevens testified that he had another surgery scheduled for November 2020 to insert pins and rods. *Id*.

Mr. Stevens testified that he uses a walker when he needs to go outside and uses a cane when he is in the house. (Tr. 511). He also testified that he cannot stand for more than four minutes before he experiences pain as well as numbness in his left leg. *Id*. Mr. Stevens further testified that he can sometimes walk for around five minutes, but that on other days he feels immediate pain or his leg giving out. (Tr. 512). He testified that he is able to sit for approximately an hour. *Id*.

##### 2. *Vocational Expert's Testimony*

In questioning the VE, the ALJ noted that a hypothetical individual with Mr. Stevens' characteristics and limitations "clearly could not perform past relevant work" as a landscape worker or a material handler, which the VE agreed with. (Tr. 518-19). The VE testified, however,

3

that such a hypothetical individual with the restrictions the ALJ had proposed could perform work as a document preparer, an order clerk, or an account clerk. (Tr. 519).

### C. Relevant Opinion Evidence[1]

#### 1. *State Agency Medical Examiners*

Elizabeth Das, M.D., a state agency medical examiner, opined that Mr. Stevens could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; push and pull in all extremities without limitation; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; balance and kneel without limitation; and occasionally stoop, kneel, or crawl. (Tr. 532-33). Dr. Das also opined that Mr. Stevens could stand, sit, or walk for six hours in an eight-hour workday. *Id*. Dr. Leon Hughes, M.D. concurred with Dr. Das' opinions on reconsideration. (Tr. 552-53). The ALJ found that the opinions of the state agency medical examiners were only "somewhat persuasive" because the longitudinal record, including imaging, Mr. Stevens' surgical history, and examinations demonstrating that Mr. Stevens experienced a foot drop, supported a greater degree of restriction. (Tr. 582).

### D. Relevant Medical Evidence

#### 1. *Evidence Predating the Hearing*[2]

Mr. Stevens has a history of back issues. On December 27, 2019, Mr. Stevens underwent surgery for his back to treat lumbar stenosis with neurogenic claudication. (Tr. 915). Prior to the surgery, Mr. Stevens reported several years of worsening bilateral leg pain and a left foot drop. *Id*. An MRI showed diffuse degenerative disease with lumbar canal stenosis, most severe from L2-3 to L4-5. *Id*.

---

[1] While the ALJ determined that Mr. Stevens suffers from decompression and depressive order with alcohol abuse, Mr. Stevens' arguments relate only the ALJ's treatment of his back pain and related symptoms. Therefore, this Report and Recommendation does not discuss medical evidence relating to any other condition.
[2] Because Mr. Stevens argues only that this case should be remanded to the Commissioner for consideration of new evidence, a complete discussion of the medical evidence before the ALJ is unnecessary. Instead, I briefly summarize the medical evidence predating the hearing before the ALJ before discussing the purported new evidence that Mr. Stevens argues warrants remand.

4

After the initial surgery, Mr. Stevens reported continued issues, including numbness, weakness in his bilateral lower extremities, cramps, near falls, and pain. (Tr. 877, 879, 1088). He was diagnosed with chronic low back pain with right-sided sciatica; unspecified back pain laterally; leg cramps; and weakness. (Tr. 881). In July 2020, Mr. Stevens had an MRI on his cervical spine, which showed multilevel prominent degenerative changes and congenital narrowing in the lumbar spine, thickening and calcification of the ligamentum flavum in the thoracic spine causing moderate narrowing of the canal and compression of the thoracic spinal cord, and mild degenerative changes in the cervical spine. (Tr. 864).

On December 10, 2020, Mr. Stevens underwent a second back surgery, a laminectomy at the T6-7 and L1-4 levels. (Tr. 1062, 1205-06). Treatment notes following the surgery indicate that Mr. Stevens used a rolling walker and that his physician ordered a cane for him. (Tr. 1070, 1077). Following the second surgery, Mr. Stevens reported continued pain, weakness, and difficulty standing and ambulating. (Tr. 1253, 1298, 1342, 1349).

2. ***Evidence the ALJ did not Consider***

On August 25, 2021, shortly before the administrative hearing on September 15, 2021, Mr. Stevens had a follow-up visit with his surgeon, Jonathan Belding, M.D. (Tr. 1423-25). Mr. Stevens reported continued struggles with low back pain, pain in his left leg and thigh, and difficulty ambulating. (Tr. 1425). Mr. Stevens also reported that he had received several injections, which had not provided him with any relief. *Id*. On examination, Mr. Stevens exhibited no midline bony tenderness, deformities, or step-offs of the thoracic, lumbar, a sacral spine. (Tr. 1424). He also exhibited 5/5 strength in his upper and lower extremities and normal reflexes. *Id*. However, Mr. Stevens was unable to ambulate, reported subjective left leg and thigh pain, and stated that he felt he could not walk. *Id*. It was noted that Mr. Stevens was at risk for a fall and that he ambulated with a cane. *Id*. Mr. Stevens' treating physician reported that he discussed with Mr. Stevens the

risks and benefits of a possible decompression and fusion and that Mr. Stevens had agreed to proceed with the surgery. *Id*.

On September 17, 2021, Dr. Belding wrote a letter stating that Mr. Stevens would be undergoing a laminectomy and fusion, posterior, lumbar, L2-S1 interbody spinal surgery on November 8, 2021. (Tr. 1422).

On November 4, 2021, after the ALJ issued his decision finding that Mr. Stevens was not disabled, Mr. Stevens underwent a laminectomy and fusion for the L2-S1 discs. (Tr. 268). Following that surgery, Mr. Stevens continued to receive treatment for his back pain and related symptoms. (Tr. 10-224, 230-503).

## IV. THE ALJ'S DECISION

The ALJ first determined that Mr. Stevens met the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 571). The ALJ further determined that Mr. Stevens had not been engaged in any gainful activity since September 18, 2020, the alleged onset date of his disability. (Tr. 572).

The ALJ next determined that Mr. Stevens had the following severe impairments: degenerative disc disease of the lumbar spine with stenosis status-post laminectomy; foraminotomy; and decompression and depressive order with alcohol abuse. *Id*. The ALJ found, however, that none of Mr. Stevens' severe impairments, whether singly or in combination, met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 573).

The ALJ next determined that Mr. Stevens had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except for no climbing of ladders, ropes, or scaffolds or crawling; occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching; no exposure to hazards (heights, machinery,

6

>commercial driving); should have the opportunity to change position up to five minutes per hour if desired; and mental limitation that he perform routine tasks in a low stress environment (no fast pace, strict quotas, or frequent duty changes) involving superficial interpersonal interactions with coworkers, supervisors, and the public (no arbitration, negotiation, or confrontation) (20 CFR 404.1569a and 416.969a).

(Tr. 575). In formulating the RFC, the ALJ did not expressly discuss the additional records from MetroHealth Medical Center that Mr. Stevens submitted on September 24, 2021, the same date as the date of the ALJ's decision.

The ALJ next found that Mr. Stevens was unable to perform any past relevant work. (Tr. 583). However, the ALJ also found that Mr. Stevens could perform jobs that exist in significant numbers in the national economy, including work as a document preparer, order clerk, and charge account clerk. (Tr. 584). Accordingly, the ALJ determined that Mr. Stevens was not disabled. (Tr. 585).

## V. THE APPEALS COUNCIL'S DECISION

Mr. Stevens requested that the Appeals Council review the ALJ's decision, arguing, among other things, that the ALJ failed to consider the recent records from MetroHealth Medical Center indicating that Mr. Stevens had an upcoming third surgery on his back. (Tr. 664-65). In connection with his request, Mr. Stevens submitted additional treatment records, which consisted of: (1) the four pages of records from MetroHealth Medical Center that Mr. Stevens had submitted to the ALJ on September 24, 2021; and (2) more than 400 pages of treatment notes and other medical records that postdated the ALJ's decision.

On September 27, 2022, the Appeals Council granted Mr. Stevens' request for review, concluding that the ALJ had committed an "error of law" by failing to exhibit or consider records that Mr. Stevens submitted on September 24, 2021. (Tr. 667-68). The Appeals Council further stated that it "intend[ed] to evaluate this evidence and enter it into the record." (Tr. 668). However, the Appeals Council also stated that it "[did] not find this evidence changes the Administrative

Law Judge's findings." *Id*. Accordingly, the Appeals Council informed Mr. Stevens that it "intend[ed] to issue a corrective, unfavorable decision finding you 'not disabled' from the alleged onset date, September 18, 2020, through September 21, 2021, the date of the Administrative Law Judge's decision." (Tr. 669). The Appeals Council informed Mr. Stevens that he could submit a statement about the facts of the case or additional evidence before the Appeals Council issued its decision. *Id*. In response to the Appeals Council's notice, on October 6, 2022, Mr. Stevens' counsel submitted a representative brief, arguing that remand for a new hearing before the ALJ was warranted in light of the additional evidence that Mr. Stevens had submitted. (Tr. 771).

On December 5, 2022, the Appeals Council issued a decision finding that Mr. Stevens was not disabled. (Tr. 1). The Appeals Council first determined that of the additional records Mr. Stevens had submitted, the vast majority did "not relate to the period at issue" and "[did] not affect the decision about whether the claimant was disabled beginning on or before September 24, 2021." (Tr. 4). The Appeals Council informed Mr. Stevens that those records could instead be used to support another application for disability. *Id*.

The Appeals Council also determined that the four pages from MetroHealth Medical Center that Mr. Stevens submitted on September 24, 2021 were relevant. *Id*. However, the Appeals Council concluded that "[t]his evidence does not show a reasonable probability that it would change the outcome of the decision." *Id*. The Appeals Council acknowledged that those records showed (1) Mr. Stevens would be undergoing a laminectomy and fusion on November 8, 2021; and (2) on physical examination, Mr. Stevens felt he could not walk and ambulated with a cane. (Tr. 5). However, the Appeals Council also found that "while this evidence does support need for subsequent surgery, the Appeals Council finds that this alone does not support additional restrictions to the residual functional capacity over those already assigned." (Tr. 6). The Appeals Council also determined that "the record as a whole does not support and inability to ambulate

8

independently for a 12-month period." *Id*. The Appeals Council thus adopted and affirmed the ALJ's findings that Mr. Stevens could not perform any past relevant work but that there was other work existing in significant numbers in the national economy that he could perform. *Id*. Accordingly, the Appeals Council found that Mr. Stevens was not disabled. (Tr. 7).

VI. **LAW & ANALYSIS**

A. **Standard of Review**

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir.

2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

    **B.**    <u>**Standard for Disability**</u>

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[3]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a

---

[3] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*, corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

### C. <u>Analysis</u>

Mr. Stevens argues that this case should be remanded pursuant to 42 U.S.C. § 405(g) for consideration of the evidence that he submitted to the ALJ on September 24, 2021 and to the Appeals Council in connection with his request for review. For the reasons set forth below, I conclude that Mr. Stevens' argument is without merit.

I construe Mr. Stevens' argument as a request for remand under sentence six of Section 405(g), which provides in relevant part that "[t]he court may . . . at any time order additional

11

evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). "To obtain a remand, the claimant must show that the evidence is 'new,' 'material,' and that there was good cause for failure to present it at the hearing." *Montecalvo v. Comm'r of Soc. Sec.*, 695 F. App'x 124, 130 (6th Cir. 2017) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)). "This is referred to as a 'sentence six remand' and requires all three elements." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under section 405." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) (quoting *Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

Here, Mr. Stevens argues that remand is warranted because the ALJ did not evaluate how Mr. Stevens' need for a third surgery impacted whether Mr. Stevens could perform a sedentary level of work and did not obtain a medical opinion on this issue. Mr. Stevens also argues that the third surgery corroborates and requires a reexamination his subjective complaints under Social Security Ruling 16-3p. Finally, Mr. Stevens argues that the third surgery raises a question regarding whether he met or equaled either list 1.15 or 1.16 at the third step of the sequential evaluation process.

I conclude that remand is not warranted for two reasons. First, as the Commissioner notes, Mr. Stevens' argument is based on a mistaken premise. He argues that remand is warranted because the ALJ did not consider the additional records he submitted. However, the Appeals Council granted review of the ALJ's decision, concluding that the ALJ committed an error of law in failing to consider the records that Mr. Stevens submitted on September 24, 2021. As the Commissioner correctly argues, a reviewing court "reviews only the final agency action, here the

decision of the Appeals Council . . . ." *Garcia v. Comm'r of Soc. Sec.*, 732 F. App'x 425, 426 (6th Cir. 2018). In rendering its decision, the Appeals Council expressly considered evidence regarding Mr. Stevens' third back surgery, concluding that those records did not change the disability determination because they did not support additional restrictions in Mr. Stevens' RFC and did not show that he was unable to ambulate for a 12-month period. (Tr. 5-6). Because the Appeals Council already evaluated the records that Mr. Stevens now claims constitute new evidence, remand under sentence six is unwarranted. *See Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 431 (6th Cir. 2015) (holding that claimant failed to satisfy burden of demonstrating that sentence six remand was warranted where "the Appeals Council has already considered the records . . . in affirming [the] ALJ['s] . . . decision.").

Regardless, remand under sentence six is also unwarranted because Mr. Stevens has not demonstrated that the purported new evidence is material. "To demonstrate materiality, [a] [p]laintiff must show that 'there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Montecalvo*, 695 F. App'x at 130 (quoting *Sizemore*, 865 F.2d at 711). "To be material, the evidence must be: (1) chronologically relevant, *i.e.*, reflect upon the claimant's condition during the relevant period; and (2) probative, *i.e.*, have a reasonable probability that it would change the administrative result." *Henderson v. Comm'r of Soc. Sec.*, No. 1:19-cv-2913, 2020 WL 7481544, at *10 (N.D. Ohio Nov. 24, 2020), *report and recommendation adopted*, 2020 WL 7480666 (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

Mr. Stevens cannot demonstrate a reasonable probability that the Secretary would have reached a different disposition of his claim if presented with the purportedly new evidence. To the contrary, the Appeals Council expressly found that virtually all of the additional records that Mr. Stevens submitted were not relevant because they related to treatment that Mr. Stevens received

after the date of the ALJ's decision on September 24, 2021. As the Appeals Council concluded, "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether the claimant was disabled beginning on or before September 24, 2021." (Tr. 4). I agree.

It is well-settled that purported new evidence is not material where that evidence relates to a period other than the time period at issue. *See Casey*, 987 F.2d at 1233 (holding that new evidence did not support plaintiff's claim because it "pertain[ed] to a time outside the scope of our inquiry"); *Henderson*, 2020 WL 7481544, at *10 (holding that portion of purported new evidence was "not chronologically relevant because those pages include only medical records detailing [claimant's] condition on November 27, 2017 – 10 days *after* the relevant period"); *Jordan v. Comm'r of Soc. Sec.*, No. 1:19-cv-2392, 2020 WL 5530021, at *12 (N.D. Ohio Sept. 15, 2020) ("the evidence is not chronologically relevant and is, therefore, not material"). Mr. Stevens therefore cannot show that the records postdating the ALJ's decision are chronologically relevant or would create a reasonable probability of a different result.

The only records from the relevant period relate to treatment Mr. Stevens received at MetroHealth Medical Center in August and September 2021. Those records included treatment notes from August 24, 2021, stating that Mr. Stevens "continues to struggle with low back pain and trouble with ambulation," reported pain in his left leg and thigh, felt unable to walk, and had received several injections without any relief. (Tr. 1425). The records also included a letter from Mr. Stevens' physician stating that he would be undergoing a laminectomy and fusion, posterior, lumbar, L2-S1 interbody spinal surgery on November 8, 2021. (Tr. 1422).

The Appeals Council determined that those records were relevant to Mr. Stevens' claim. (Tr. 5). However, the Appeals Council also determined that the records did not "show a reasonable probability that [they] would change the outcome of the decision." (Tr. 4). In particular, the

Appeals Council stated that, "while this evidence does support need for subsequent surgery, the Appeals Council finds that this alone does not support additional restrictions to the residual functional capacity over those already assigned." (Tr. 6). The Appeals Council also determined that, while the treatment notes "suggest[] an exacerbation of the claimant's symptoms, the record as a whole does not support an inability to ambulate independently for a 12-month period." *Id*.

In light of the Appeals' Council's findings, "there is no reason to think that remanding this matter for further administrative proceedings would result in a different outcome." *Blankenship.*, 624 F. App'x at 431; *see also Castro v. Comm'r of Soc. Sec.*, No. 1:19 CV 744, 2020 WL 2854270, at *13 (N.D. Ohio Apr. 14, 2020), *report and recommendation adopted*, 2020 WL 2850279 ("Plaintiff submitted this evidence to the Appeals Council, which considered it and found it '[did] not show a reasonable probability that it would change the outcome of the decision'") (quoting *Blankenship*, 624 F. App'x at 431); *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-cv-00065-SKL, 2019 WL 1748512, at *4 (E.D. Tenn. Apr. 18, 2019) (declining to remand case under sentence six where "the Appeals Council reviewed the questionnaires and found they did not show a reasonable probability that [they] would change the outcome of the decision") (quotation omitted).

The same is true here. Indeed, the case for a sentence six remand is even weaker here than in *Blankenship*. There, the Appeals Council considered the claimant's new evidence in the process of declining to accept review of the ALJ's decision. *Id*. at 423. Here, by contrast, the Appeals Council accepted review of the ALJ's decision and expressly considered Mr. Stevens' new evidence, concluding that those records did not alter the ALJ's findings and that Mr. Stevens was not disabled. Because the Appeals Council already considered the purported new evidence in reaching its decision, Mr. Stevens cannot demonstrate a reasonable probability that remand for consideration of this evidence would lead to a different disability determination. I therefore recommend that the Court deny Mr. Stevens' request for a sentence six remand.

## VII. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

Dated: December 6, 2023

s/ *Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VIII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the

United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).